AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
2023 White GMC Canyon Truck
Bearing New Mexico License Plate 624XCM

Case No. 23 MR 1549

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses committed in Indian Country |
| 18 U.S.C. § 11112 | Involuntary Manslaughter |

The application is based on these facts:

See attached affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lorraine Hardy, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically Sworn and Electronically Signed   *(specify reliable electronic means)*.

Date: 8/14/2023

*Judge's signature*

City and state: Farmington, New Mexico

B. Paul Briones, United States Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:**<br>2023 WHITE GMC CANYON TRUCK BEARING VIN NUMBER 1GTP63BEK6P1163582 & NEW MEXICO LICENSE PLATE 624 XCM CURRENTLY LOCATED AT FBI FARMINGTON RESIDENT AGENCY, 215 W. ELM STREET, FARMINGTON, NEW MEXICO | Case No. _____ |

**AFFIDAVIT**

I, Lorraine Hardy, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application of Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the search for and seizure of electronically stored information, as particularly described in Attachment B, within the white 2023 GMC Canyon Truck bearing VIN number 1GTP63BEK6P1163582 and New Mexico License Plate 624 XCM, currently located at the FBI Farmington Resident Agency, 205 W. Elm Street, Farmington, New Mexico (the "TARGET VEHICLE"), a description of which is contained in Attachment A.

2.      I am currently serving as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes

1

that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape. I have been with the FBI for approximately 4 years. I have received on-the-job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects, targets, and witnesses, writing affidavits for and executing search and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting and reviewing evidence, and analyzing public records.

3. The information set forth in this affidavit has been derived from an investigation conducted by the Farmington Resident Agency of the FBI, New Mexico State Police (NMSP), Navajo Police Department (NPD) and the Navajo Nation Department of Criminal Investigations (NNDCI). During my investigation, I have developed information I believe to be reliable from the following sources:

   a. Information provided by the FBI, NMSP, NPD, NNDCI, and other law enforcement officials;

   b. Information provided by witnesses; and

   c. Records from the FBI National Crime Information Center (NCIC), Navajo Nation Tribal Courts, and New Mexico Courts, and the Motor Vehicle Division (MVD).

4. This affidavit is intended to show only that there is sufficient probably cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. My basis for believing that evidence is located within the TARGET VEHICLE, including its Event Data Records (EDR) system, is as follows:

a. On or about August 12, 2023, the Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal Investigations (NNDCI) of a head-on collision involving two vehicles that occurred at approximately 6:45 a.m. on Navajo Route (NR) 36 at mile marker 22, Upper Fruitland, New Mexico, which resulted in the death of the driver and passenger of the second vehicle.

b. A New Mexico State Police (NMSP) officer responded to the scene shortly after receiving the call. While in route, the NMSP officer passed a Native American male walking on NR 36 West bound approximately a half mile from the crash. The NMSP officer continued to the crash site as the first responding unit. After arriving on scene, the NMSP officer observed an off-duty Southern Ute tribal officer (hereinafter referred to as O.W.) rendering aid to the occupants of a 2018 blue Toyota passenger car (the "Victim Vehicle"), bearing New Mexico license plate 776 WZG. O.W. informed the NMSP officer that the subject fled the scene on foot headed west on NR 36. The NMSP officer turned around and attempted to locate the individual he saw walking but was unable to. The NMSP officer had his dash camera recording due to running code (utilizing lights and siren) while responding to the crash scene. I was able to view the camera footage and observed a younger male wearing a black t-shirt, brown cargo shorts, and glasses walking westbound on NR 36, away from the crash site.

c. Officers with the Navajo Nation Police Department (NNPD) arrived on scene a short time after the crash and observed the TARGET VEHICLE in the middle of NR 36 with significant front-end damage. The Victim Vehicle was perpendicular to the TARGET VEHICLE and also had significant front-end damage. The Victim Vehicle had two occupants, a female in the driver's seat (hereinafter referred to as JANE DOE), year of birth 1957, and a male in the passenger seat (hereinafter referred to as JOHN DOE), year of birth 1959. The Victim Vehicle was registered to JANE DOE. JANE DOE was transported by ambulance to San Juan County Regional Medical Center and confirmed deceased in route to the hospital. JOHN DOE was confirmed deceased on scene by the Office of the Medical Investigator personnel.

d. The TARGET VEHICLE registered to the suspected driver, Leonardo Robbie DUNCAN (hereinafter referred to as DUNCAN), year of birth 1991.

e. While on scene, NNPD officers observed several empty Blue Moon beer cans in the rubble from the damaged vehicles and an empty Blue Moon beer box was observed in the bed of the TARGET VEHICLE. An empty Blue Moon beer can was also observed through the window of the TARGET VEHICLE. The beer cans and box were collected as evidence and both the TARGET VEHICLE and Victim Vehicle were sealed and towed to a secure area pending search warrants.

f. A witness (hereinafter referred to as K.B.), year of birth 1983, was interviewed telephonically by law enforcement on August 12, 2023, and it was learned K.B. was traveling to Northern Edge Casino from Shiprock when he noticed the TARGET VEHICLE and the Victim Vehicle in the middle of the road near the Walter Collins

4

Center on NR 36. K.B. noticed both vehicles had front end damage and called 911. As K.B. approached the vehicles, he observed a male exit the driver's side of the TARGET VEHICLE. K.B. believed the male was intoxicated due to his red, blood shot eyed, and the male staggering around the TARGET VEHICLE. The male told K.B. he was okay, so K.B. started assisting JANE DOE in the driver's seat of the Victim Vehicle. JANE DOE told K.B. she could not breathe, so K.B. tilted the seat back in an attempt to open her airway. JANE DOE told K.B. the TARGET VEHICLE crossed over into her lane and she tried to avoid it. K.B. then noticed the male digging through the TARGET VEHICLE and saw him remove something from the cab. K.B. believed it was a bottle of alcohol. K.B. did not see what the male did with the bottle. JOHN DOE woke up and K.B. walked around to the passenger side of the Victim Vehicle to assist. JOHN DOE did not say anything to K.B. When K.B. looked up he saw the male walking westbound on NR 36 and yelled for him to stay but he did not listen and continued walking. K.B. did not see the male leave with a cell phone. K.B. described the male as 5'8 or 9' tall with short black hair, glasses, black shirt, and khaki pants.

g.   It was later learned from San Juan County Dispatch that another witness (hereinafter referred to as D.P.), year of birth 1983, called in at approximately 6:29 a.m. on August 12, 2023 to report a drunk driver. D.P. was later interviewed by FBI and stated that he passed a newer model white GMC pickup truck parked off the side of NR 36, east of the Northern Edge Casino. D.P. observed a male standing in the open driver's side door of the white GMC pickup truck looking inside the cab. The male was wearing a black t-shirt, but D.P. could not see his face. A short time after, D.P. noticed

5

in his rear view mirror the white GMC pickup truck following him heading eastbound on NR 36 towards Farmington. D.P. observed the white GMC pickup truck weaving all over the road and narrowly missing a blue van heading westbound on NR 36. D.P. observed the white GMC pickup truck turn around at the Northern Edge Casino traffic light and head back westbound. The white GMC pickup truck described by D.P. is believed to be the TARGET VEHICLE.

h. Later the same day, DUNCAN's father (hereinafter referred to as L.D.), year of birth 1972, brought DUNCAN to the NNPD to turn himself in. DUNCAN was taken into custody by NNPD officers. NNPD officers conducted a breath alcohol content (BrAC) test on DUNCAN to determine how intoxicated he still was. DUNCAN's BrAC was .08 at 12:30 p.m., approximately six hours after the incident. At the time of DUNCAN's arrest he was wearing a black t-shirt, brown cargo shorts, and glasses. DUNCAN was transported by NNPD officers and booked into Kayenta Correctional Facility in Kayenta, Arizona.

i. After an interview with L.D. it was learned DUNCAN called L.D. at work from his Apple Watch at approximately 7:00 a.m. and asked for a ride. After L.D. picked up DUNCAN at home, DUNCAN told him he hit another vehicle and crashed his ride. DUNCAN was scared, fled the scene of the crash, and hitch-hiked home. DUNCAN told L.D. he dozed off for just a second and it all happened so fast. L.D. did not see a cell telephone in DUNCAN's possession. L.D. was aware DUNCAN drank alcohol on occasion, but DUNCAN did not seem intoxicated that morning.

j. NNPD and NMSP did not see a cellular telephone in plain sight on the scene of the accident. In the interview with L.D. it was learned DUNCAN called L.D. from an Apple Watch and L.D. did not see DUNCAN with his cell phone prior to turning himself in. It is my belief that DUNCAN did not take his cellular telephone before fleeing the scene.

6. The TARGET VEHICLE is equipped with an Event Data Records (EDR) that may contain data from the crash including information such as pre-impact speed, throttle position, engine RPM, brake usage, and seatbelt usage. New Mexico State Police has equipment to gain access to this device and the data therein. Based on my training and experience, your affiant understands the data retrieved from the EDR can be used in assisting with the investigation and can determine information regarding the vehicle's operation at the time of the crash, including possible speed of the vehicle at the time of the crash.

7. Based on information provided within this affidavit, your affiant believes that evidence of a crime can be found by conducting a search for physical items related to drug or alcohol consumption, including illegal substances, drug paraphernalia, bottles, receipts of purchase, cans, and other items known to hold drugs or alcoholic beverages within the TARGET VEHICLE. Photographs of both the interior and exterior of the vehicle will also assist in the investigation. DUNCAN's cell phone is believed to have been left in the vehicle and will assist in the investigation by potentially providing a timeline of DUNCAN's activities throughout the day, GPS location information, and conversations or other communication that discusses his alcohol or drug consumption prior to the accident.

8. Based on my training and experience, cellular telephones have capabilities that allow it to serve as a wireless telephone, digital camera/audio video recorder, portable media player, personal digital assistant, and internet access device. Examining data stored on devices of this type can uncover evidence that reveals or suggests who possessed or used the device and/or direct evidence of crimes committed, as well as location of the device and the person who possessed it. Information on the cell phone could provide evidence of where DUNCAN was earlier in the day and the night prior to the crash. Based on my training and experience, people often communicate about social interactions, disclosing who they were with, what they were doing, or where they were going. Oftentimes, this includes mention of drug or alcohol use, which would provide insight into DUNCAN's physical state prior to the vehicle accident. A separate search warrant will be obtained for gathering any data from any cellular telephone or other digital device that may be found in the TARGET VEHICLE.

9. The reported incident took place on NR 36mile marker 22, GPS coordinates 36.710679, -108.345651, which is within the exterior boundaries of the Navajo Nation, San Juan County, and the town of Upper Fruitland, New Mexico. DUNCAN and JOHN DOE are enrolled member of the Navajo Nation. JANE DOE is an enrolled member of Hopi Tribe.

## BACKGROUND ON EVENT DATA RECORDERS (EDRs)

10. Based on my training and knowledge obtained from New Mexico State Police (NMSP) crash reconstruction agents, the National Highway Traffic Safety Administration (NHTSA), and other law enforcement agents and officers, I have learned the following:

   a. An Event Data Recorder (herein after referred to as an "EDR"), is a device installed in a motor vehicle to record technical vehicle and occupant information for a brief period of time before, during, and after a crash.

   b. EDRs may record (1) pre-crash vehicle dynamics and system status; (2) driver inputs; (3) vehicle crash signature; (4) restraint usage/deployment status; and (5) post-crash data such as the activation of an automatic collision notification (ACN) system.

   c. EDRs record information related to an "event," such as a vehicle crash.

   d. The NMSP has equipment to access the EDRs located in vehicles and download the data therein.

   e. As previously noted, the TARGET VEHCLE is a 2023 GMC Canyon truck and believed to be equipped with an EDR.

   f. The requested warrant authorizes a later review of the EDR information described herein from the TARGET VEHICLE, which review may continue past the date required for execution of the warrant.

## CONCLUSION

11.     Based on the facts set forth in this affidavit, there is probable cause to believe there was a violation of 18 U.S.C. §§ 1153 and 1112, involuntary manslaughter in Indian Country, committed by DUNCAN, and that evidence of such crimes may be found at the TARGET VEHICLE Therefore, I submit that this affidavit supports probable cause for a warrant to search the TARGET VEHICLE described in Attachment A and seize the items described in Attachment B.

12.     Assistant United States Attorney Kimberly Bell has approved this application.

13.     I swear that this information is true and correct to the best of my knowledge and belief.

*J. Hardy*

Lorraine Hardy, Special Agent
Federal Bureau of Investigation

Electronically SUBSCRIBED and telephonically SWORN to me this __14__ day of ___August___, 2023.

*B. Paul Briones*

HONORABLE B. PAUL BRIONES
United States Magistrate Judge

## ATTACHMENT A

PROPERTY TO BE SEARCHED

1. A white GMC Canyon, bearing VIN 1GTP63BEK6P1163582 and New Mexico license plate number 624 XCM located at the FBI Farmington Resident Agency, 215 W. Elm Street, Farmington, New Mexico, identified as the TARGET VEHICLE.

2. Event Data Records (EDR) located within the TARGET VEHICLE. This warrant authorizes, inter alia, the forensic examination of the TARGET VEHICLE'S EDR system for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

PROPERTY TO BE SEIZED

1. Physical items related to alcohol consumption, illegal substances, drug paraphernalia, bottles, receipts of purchase, cans, and other items known to hold drugs or alcoholic beverage.

2. Cellular telephone(s).

3. Photographs of the interior and exterior of the TARGET VEHICLE.

4. All electronic and/or digital data retrieved from the Event Data Recorder (EDR), including but not limited to:

    i. media files;

    ii. unique device identifiers;

    iii. call logs;

    iv. contacts;

    v. SMS;

    vi. Bluetooth connections;

    vii. USB connections;

    viii. voice commands;

    ix. voice recordings;

    x. voice calling;

    xi. web browser history;

    xii. Wi-Fi connections;

    xiii. speech recognition;

    xiv. time updates;

     xv. track logs;

    xvi. traction events;

   xvii. traffic updates;

  xviii. stop/start log;

    xix. GPS warnings;

     xx. hard acceleration;

    xxi. hard braking;

   xxii. light status;

  xxiii. odometer reading;

  xxiv. gear shifts;

   xxv. historical navigation data;

  xxvi. historical speed data;

 xxvii. historical event data; and

xxviii. data streaming services and related content.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of the attorneys for the government and their support staff for their independent review.